| | | |
|---|---|---|
| LARRY L. DAIGNEAULT, | : | |
|     Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-06-cv-1690 (JCH) |
| | : | |
| EATON CORPORATION, et al, | : | FEBRUARY 11, 2008 |
|     Defendants | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS [Doc. No. 17]; DEFENDANT'S MOTION FOR INJUNCTION [Doc. No. 17]; PLAINTIFF'S MOTION TO WITHDRAW ORDER [Doc. No. 23]; PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF [Doc. No. 36]; DEFENDANTS' MOTION TO CONTINUE [Doc. No. 40]; PLAINTIFF'S MOTION FOR LEAVE [Doc. No. 57]; DEFENDANTS' MOTION TO CONSOLIDATE [Doc. Nos. 71, 73]**

Plaintiff Larry Daigneault, pro se, brings this suit against his former employer Eaton Corporation ("Eaton"), several of Eaton's officers,[1] and two of Eaton's outside attorneys (and their law firms)[2]  Daigneault alleges violations of 42 U.S.C. §§ 1983 and 1985, the Age Discrimination in Employment Act ("ADEA"), and the Racketeering Influenced and Corrupt Organizations Act ("RICO").  The defendants have moved to dismiss Daigneault's Amendment Complaint.  See Doc. No. 17.  For the reasons that follow, that Motion is **GRANTED IN PART** and **DENIED IN PART**.  This Ruling also disposes of a number of other pending motions.

---

[1] The defendant Eaton officials are Richard F. Delisle, Richard Recht, and Robert Rustigan.

[2] The attorney defendants are Glenn A. Duhl and Robert A. Harris.  The law firm defendants are Siegel, O'Connor, O'Donnel, & Beck, P.C., and Voys, Sater, Seymour, & Pease, LLP.

## I.    BACKGROUND

The operative complaint in this case is the Amended Complaint Daigneault filed on October 30, 2006.  <u>See</u> Doc. No. 6.  The court describes the facts as set out in that Complaint, drawing all factual inferences in the plaintiff's favor.  <u>See</u> <u>Yung v. Lee</u>, 432 F.3d 142, 146 (2d Cir. 2005).

Daigneault was an employee of Eaton during the 1990s.  Amended Compl. ¶ 2. While at Eaton, Daigneault had frequent clashes with defendant Richard Delisle, his supervisor, as well as with two other individuals in management, defendants Richard Recht and Robert Rustigan.  In Daigneault's view, Delisle engaged in illegal actions while both were working for Eaton, including making fraudulent repairs, <u>id.</u> at ¶¶ 9-10, and offering to bribe Daigneault to be quiet about what Daigneault had observed, <u>id.</u> at ¶ 14.  When Daigneault discussed the bribe with his co-workers, Delisle reprimanded him, with Recht's approval.  <u>Id.</u> at ¶ 33.

In April 1998, Daigneault was terminated from his position at Eaton.  <u>Id.</u> ¶¶ 61-64.  In response, in February 1999, Daigneault brought suit in Connecticut state court against Eaton, Delisle, Rustigan, and Recht.  <u>Id.</u> ¶ 72.  Daigneault brought a variety of unspecified claims. <u>Id.</u> ¶ 74.

During discovery, Recht lied in a deposition when he stated that Daigneault had asked him not to investigate the bribery charge.  <u>Id.</u> ¶ 17.  Delisle and Rustigan also lied numerous times during their depositions.  <u>Id.</u> ¶ 77.

Eaton's attorneys during the state court proceedings were defendants Glenn

Duhl and Robert Harris. Daigneault alleges that, when Duhl and Harris filed for summary judgment in state court, their motion contained fabrications, misrepresented the evidence in the case, and referenced an affidavit solicited in bad faith. Id. ¶ 79. Based on this allegedly improper motion, the state court dismissed three of Daigneault's claims for relief sometime in 2002. Id. ¶ 79.

On October 28, 2003, the parties participated in a mediation session. This session took place one day before the scheduled date of jury selection. At the session, Daigneault "reluctantly agree[d]" to a settlement. Id. ¶ 81. Part of this agreement contained a waiver of Daigneault's ability to bring any ADEA claim that he might have had based on his employment with Eaton, even though Daigneault had not actually brought an ADEA claim in state court.[3] Id. ¶ 81.

Daigneault's attorney reported this settlement to the state court the next day. Id. ¶ 25. In compliance with the court's standing orders regarding settlement, Daigneault's attorney filed a motion to withdraw the case from the court's docket. Id. ¶ 82.

Because the settlement agreement waived ADEA rights, at least part of the agreement triggered a provision of the Older Workers Benefit Protection Act ("OWBPA"), a federal law. In pertinent part, the OWBPA states that an individual may

_____

[3] Looking solely at the Amended Complaint, it is ambiguous whether the state court action actually contained an ADEA claim, or if instead Eaton merely sought the waiver to prevent Daigneault from filing a subsequent lawsuit raising the issue. In opposing Eaton's Motion to Dismiss, however, Daigneault claimed that his original state court lawsuit did not include an ADEA claim, and he asserted that this fact had been clear in the Amended Complaint. Mem. in Opp. at 3-4. Defendants do not appear to contend otherwise.

not waive an ADEA claim unless that individual is given at least 21 days to consider any agreement waiving such claim. 26 U.S.C. § 626(f)(1)(F)(i). In addition, the waiver is not valid unless such agreement provides for a seven day revocation period following execution of the agreement. Id. § 626(f)(1)(G). The written draft of the settlement agreement specifically stated that Daigneault had these rights under the OWBPA. Amended Compl. ¶ 84.

Daigneault and his attorney received a written draft of the settlement agreement on November 4, 2003. Seven days later, Daigneault filed a motion in the state court seeking to re-open his case on the grounds that he had rejected the settlement. Following the filing of this motion, plaintiff proceeded pro se. Id. ¶ 83.

Attorney Duhl opposed the re-opening of the case, advancing the "fabricated" claim that Daigneault had authorized the earlier withdrawal of his suit. He also made the allegedly false claim that OWBPA bore only on the validity of the ADEA waiver, and further "falsely" claimed that the OWBPA did not apply at all because the statute of limitations on any ADEA claim had already expired. Id. ¶ 84. The state court refused to reopen the case. Id. ¶ 85.

Daigneault asked the state court to reconsider. Attorney Duhl opposed this on what Daigneault now calls "invalid grounds," and Duhl also advanced a "fraudulent" claim of redundancy. Id. ¶ 86. The state court refused to reconsider its ruling. Id. ¶ 87. Undeterred, Daigneault filed a motion to reargue, which Attorney Duhl again opposed. Daigneault also filed a Motion for Contempt based on "the numerous ethical/legal

violations by Defendants and their counsel to obstruct justice." Id. ¶ 88-89.

The motion to reargue was denied. Id. ¶ 89. However, a hearing was held on the Motion for contempt. The judge presiding at the hearing, Judge Mintz, "recognized that Plaintiff had an absolute right to reject the settlement under its terms." Id. ¶ 91. He redesignated the contempt Motion as another Motion to Reargue, and referred the case to Judge Richards, the judge who had previously denied Daigneault's Motion to Reargue. Id. Judge Mintz also denied a Motion to Dismiss the Contempt Motion that Eaton had filed. Judge Mintz ordered Attorney Duhl to inform Judge Richards of Judge Mintz's ruling. Id.

A new hearing was held before Judge Richards on August 4, 2004. Despite Judge Mintz's prior order, Attorney Duhl did not inform Judge Richards of Judge Mintz's prior ruling. Instead, he informed Judge Richards that the hearing was about the Motion for Contempt and Eaton's Motion to Dismiss. Id. ¶ 92. Judge Richards denied the Motion for Contempt. Id. ¶ 93.

Daigneault appealed the denial of his Contempt Motion to the Appellate Court of Connecticut. Id. ¶ 95. In arguing his appeal, Daigneault relied in part on his interpretation of the OWBPA. Id. ¶ 95. Eaton opposed the appeal and asserted that Daigneault was engaging in harassing behavior. Id.

In a published opinion, issued on June 21, 2005, the Connecticut Appellate Court affirmed the denial of the Contempt Motion. See Daigneault v. Consol. Controls Corp./Eaton Corp., 875 A.2d 46, 47 (Conn. App. Ct. 2005) (per curiam). The Appellate

Court noted that Daigneault had attempted to appeal the denials of his previous motions, and that all of those appeals had been untimely under state law. Id. at 47 n.2. The Appellate Court then explained that, because the Superior Court had denied Daigneault's Motion to restore the case to the docket, and because Daigneault had filed no timely appeal from that ruling, a final judgment had entered in Daigneault's underlying lawsuit. Id. at 47-48. Accordingly, the Appellate Court ruled that the Superior Court lacked jurisdiction to entertain Daigneault's Motion for Contempt, and it affirmed Judge Richards's ruling. Id. at 48.

The Connecticut Supreme Court denied Daigneault's certification petition, Daigneault v. Consol. Controls Corp./Eaton Corp., 888 A.2d 83 (Conn. 2005), and on February 26, 2006, the United States Supreme Court denied Daigneault's petition for certiorari, Daigneault v. Consol. Controls Corp./Eaton Corp., 546 U.S. 1217 (2006).

Before the Appellate Court issued its ruling, however, Daigneault had embarked on yet another attempt to get his case reopened in the Connecticut state courts. Indeed, in January 2005, Daigneault filed a Motion to Open in the Connecticut Superior Court. Eaton opposed this motion with the fabricated claim that Daigneault had failed to pay the required filing fee. Amended Compl. ¶ 96. Along with this Motion, Daigneault also filed a Motion to Compel the production of various testimony and documents. Id. Eaton, for its part, filed a Motion for Sanctions.

The Superior Court denied the Motion for Sanctions, but it also denied the Motion to Compel, and so Daigneault filed an appeal (separate from his other, then-

pending appeal).  Id. ¶ 97.  In Daigneault's view, his Motion to Open was still pending, and thus Eaton "lied" when it opposed Daigneault's appeal by arguing that the Motion to Open had been denied.  Id.  Daigneault's appeal was unsuccessful.  Id. ¶ 103.

Daigneault also filed other motions in the Superior Court in 2005 and 2006, with the goal of reopening his case, and the denial of these motions resulted in still more appeals to the Connecticut Appellate Court.  Id. ¶¶ 99-103.  Daigneault alleges that Attorney Duhl made further fraudulent representations in the course of opposing these motions.  Id. ¶ 100.

Daigneault also decided to file claims in federal court.  In case number 04-cv-984, Daigneault filed suit against Eaton, and several of its officers, as well as several Connecticut judges.  This court dismissed the suit against the state officials in 2004. Daigneault then filed an Amended Complaint against the non-state defendants, which Eaton sought to dismiss.  In support of Eaton's Motion to Dismiss, Attorney Duhl argued, inter alia, that Daigneault had voluntarily withdrawn his state court suit.  Id. ¶ 94.

This court dismissed the Amended Complaint in 04-cv-984 in 2005 based on the Rooker-Feldman doctrine.  The Second Circuit disagreed with this court's Rooker-Feldman analysis, and it reversed in part and remanded with instructions to consider Eaton's other arguments for dismissal of the Amended Complaint.  See Daigneault v. Eaton Corp., 242 Fed. Appx. 761 (2d Cir. 2007).  By Ruling issued this same day, the court has granted Eaton's Motion to Dismiss in the 2004 case on the grounds that

Daigneault's Amended Complaint fails to state a claim on which relief can be granted.

The 04-cv-984 case is not the only federal court case that Daigneault has launched arising out of his interactions with Eaton. On October 24, 2006, Daigneault filed a Complaint in this action. Doc. No. 4. An Amended Complaint was filed six days later. Doc. No. 6. In the Amended Complaint, Daigneault brings four claims for relief: (1) a claim under 42 U.S.C. § 1983 against all defendants, (2) a claim under the ADEA against Eaton only, (3) a claim under 42 U.S.C. § 1985 against all defendants, and (4) a civil RICO claim against Eaton only.

Daigneault has filed this suit <u>in forma pauperis</u>. Accordingly, the court must dismiss any claim that is "frivolous or malicious" or that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). In addition, the defendants have filed their own Motion to Dismiss.

## II.     MOTION TO DISMISS

### A.     <u>Section 1983 Claim</u>

Daigneault's first cause of action asserts that the defendants have somehow deprived him of rights guaranteed by federal law – specifically, the OWBPA – and Daigneault thus seeks damages under 42 U.S.C. § 1983. However, § 1983 only applies to the deprivation of rights that occur "under color of state law." 42 U.S.C. § 1983. This has been interpreted to mean that § 1983 cannot be used to challenge mere private conduct. <u>Am. Mfr. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999). "The traditional definition of acting under color of state law requires that the defendant

in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).

In this case, the court discerns only one way in which the defendants, through the course of the state court litigation,[4] even arguably acted "under color of state law" to deprive the plaintiff of his OWBPA benefits.  Quite simply, the defendants, through their state-licensed attorneys, made arguments to the state courts that purported to rely on state law and procedure.  The state courts adopted some of these arguments, and, as a result, Daigneault was unable to reopen his case.

This is simply too tenuous a connection to state authority.  In Polk County v. Dodson, 454 U.S. 312 (1981), the Supreme Court held that a public defender, although appointed by the state, does not act "under color of state law" during the normal course of his representation of clients in state court.  Id. at 317-24.  The court reasoned that in such a circumstance, the public defender is the functional equivalent of a privately retained attorney.  Id.  Polk County thus implicitly recognized that a private attorney does not act under "color of state law" simply by advocating for certain results on the basis of state law.  Cf. Edmonson v. Leesville Concrete Co., 500 U.S. 614, 627-28 (1991) (holding that a private party's use of peremptory challenges during jury selection

_____

[4] Actions undertaken prior to the state court litigation are barred by the three-year statute of limitations for § 1983 actions in Connecticut.  See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994).

constitutes state action because the government has delegated some of its authority to private litigants, and contrasting the use of these challenges with ordinary tactical decisions made during litigation).

Similar reasoning operates in <u>Dennis v. Sparks</u>, 449 U.S. 24, 28-29 (1980). <u>Dennis</u> held that, when private parties corruptly conspire with a judge to influence state court actions, those parties act under "color of state law" because they are "willful participant[s] in joint action with the State or its agents." <u>Id.</u> at 28. The <u>Dennis</u> Court was careful to note that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." <u>Id.</u>

The defendants in this action were either parties to Daigneault's state court lawsuit or private attorneys who handled that lawsuit. Even assuming that they made arguments that intentionally misrepresented the relevant facts and law to the state court, they certainly did not collude with the state court or actively conspire with it. Accordingly, the alleged actions of the defendants were not undertaken "under color of state law," and Daigneault cannot maintain a § 1983 suit against them. The § 1983 claim is dismissed.[5]

---

[5] While defendants argue for this result, they also contend that the court lacks jurisdiction to decide this claim under the <u>Rooker-Feldman</u> doctrine. Although courts must normally decide jurisdictional questions before reaching the merits, <u>see</u> <u>Steel Co. v. Citizens for a Better Envt.</u>, 523 U.S. 83, 94 (1998), the Second Circuit has held that <u>Steel Co.</u> applies only to questions of constitutional jurisdiction. <u>See</u> <u>United States v. Miller</u>, 263 F.3d 1, 4 n.2 (2d Cir. 2001). <u>Rooker-Feldman</u> implicates only this court's statutory jurisdiction. <u>See</u> <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 291-92 (2005). Accordingly, this court may permissibly dismiss Daigneault's claims without reaching the <u>Rooker-Feldman</u> issues.

B.    ADEA Claim

Daigneault's second claim for relief, asserted solely against Eaton, is a claim for relief based upon the ADEA.  While this is listed as a single claim in the Amended Complaint, it appears to the court that Daigneault is actually relying upon three separate ADEA theories: (1) Daigneault's termination from Eaton was unlawfully based on his age, (2) Eaton's attempts to enforce the state court settlement constitute unlawful retaliation for Daigneault's exercise of his OWBPA rights, and (3) the ADEA itself authorizes a claim for damages based on a party's attempts to enforce an invalid ADEA waiver.

Daigneault's third ADEA theory mirrors a theory he has advanced in related litigation against Eaton, and that had been pending before this court in the 04-cv-984 case.  In a Ruling issued this same date, the court concluded that the ADEA does not authorize a compensatory damages award, in an independent action, based on a party's attempt to enforce an agreement that is void under the ADEA's waiver provision. The court continues to abide by that ruling for the reasons stated there.

 Additionally, in so far as Daigneault is relying on the first theory, his claim is barred by the applicable statute of limitations.  Before filing a federal ADEA claim, an individual must file a charge of discrimination with the EEOC within 300 days "after the alleged unlawful practice occurred."  29 U.S.C. § 626(d).  Here, Daigneault's termination occurred in 1999, yet his Amended Complaint states that he filed a charge with the EEOC on March 25, 2005.  This was approximately five years too late.

Daigneault argues that his untimeliness should be excused because there was a "continuing violation" insofar as Eaton repeatedly relied on Daigneault's ADEA waiver during the state court litigation – conduct that allegedly occurred right up to the filing of the original Complaint in this case. Mem. in Opp. at 20. However, the continuing violation doctrine is used to excuse a plaintiff from filing <u>an additional</u> EEOC charge, based on continuing conduct, if the plaintiff has previously filed a <u>timely charge</u> with the EEOC in related matters. <u>See, e.g.</u>, <u>Lambert v. Genesee Hosp.</u>, 10 F.3d 46, 53 (2d Cir. 1993). There is no indication that Daigneault filed an earlier, timely charge in this case.

Moreover, the continuing violation theory cannot be invoked when there are really two separate and discrete acts of discrimination. <u>See</u> <u>AMTRAK v. Morgan</u>, 536 U.S. 101, 110-15 (2002); <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 239 (2d Cir. 2007). It is plain that Eaton's wrongful termination of Daigneault was discrete from its conduct, years later, in attempting to enforce the ADEA waiver. <u>See</u> <u>Kassner</u>, 496 F.3d at 239 (noting that discontinuance of a job is a discrete act).

Because the continuing violation doctrine is not applicable, and because the court can see no grounds for equitable tolling, Daigneault's wrongful termination claim is barred by the statute of limitations.

Daigneault's final ADEA theory is that Eaton violated the ADEA's retaliation provision. This theory presents unique concerns because Daigneault appears to be arguing that Eaton's conduct during the state court litigation, from 2004 onward, constituted retaliation for Daigneault's efforts to enforce his rights under the ADEA's

waiver provision.[6]  Assuming that this conduct was fairly encompassed in Daigneault's

EEOC charge, this claim is not barred by the 300-day limitations period to the extent

that it is based on conduct that took place no more than 300 days before March 25,

2005.[7]

     Eaton contends that the retaliation claim is still barred by the Rooker-Feldman

doctrine.  However, in the aftermath of the Supreme Court's decision in Exxon Mobil

Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the Second Circuit has

revisited the Rooker-Feldman doctrine and clarified that there are four requirements for

its application: (1) the federal plaintiff must have lost in state court, (2) the federal

plaintiff must be complaining of injuries caused by the state court judgment, (3) the

federal plaintiff's lawsuit must be one that invites district court review and rejection of

the state court judgment, and (4) the state court judgment must be one that was

rendered before the federal proceedings began.  Hoblock v. Albany County Bd. of

---

[6] Eaton has not argued that the actions discussed in the Amended Complaint
cannot constitute "retaliation" under the ADEA.  The court is unsure that the relevant
conduct could be actionable retaliation, but in light of the relative legal novelty of the
issue, and the lack of briefing on the issue by any party, the court is not yet prepared to
dismiss the claim on that basis.

[7] This is not to say that all or part of the retaliation claim might not be barred for
others procedural reasons.  For instance, it does not appear that Daigneault's suit was
filed within 90 days after the EEOC dismissed his claim.  Cf. 29 U.S.C. § 626(e).  It is
also not clear from Daigneault's Amended Complaint whether he filed any subsequent
charges with the EEOC based on conduct that occurred after March 25, 2005.
    Eaton has not raised any of these issues in its Motion to Dismiss.  If Eaton were
to raise these issues in a subsequent motion for judgment on the pleadings, or in a
motion for summary judgment, the court would of course consider them.

Elections, 422 F.3d 77, 85 (2d Cir. 2005); see also McKithen v. Brown, 481 F.3d 89, 97 (2d Cir. 2007).

Defendants' Rooker-Feldman argument fails on both the second and third prongs. On the second prong, an injury is only caused by a state court judgment insofar as it is produced by the conclusion of state court proceedings. McKithen, 481 F.3d at 97-98. An injury is not caused by a state court judgment to the extent that it existed before the state court renders a judgment. Id. at 98. Here, the court understands Daigneault's retaliation claim not to be attacking the state court judgment, but rather Eaton's actions in arguing to the state court that it should not reopen Daigneault's litigation and in seeking various sanctions against Daigneault. Additionally, turning to the third prong, Daigneault's retaliation claim does not seek review and rejection of the state court judgment. Viewed in the best light, Daigneault is complaining about the fact that Eaton made certain arguments in court, rather than the state court's acceptance of these arguments.[8] Rooker-Feldman is not a bar to Daigneault's retaliation claim.[9]

The defendants' Motion to Dismiss raised only two grounds to dismiss the ADEA

---

[8] Of course, in a number of other claims Daigneault has advanced the position that the state court judgment is incorrect. Those claims may well be seeking review and rejection of state court judgments.

[9] To the extent that Daigneault's somewhat amorphous retaliation claim is complaining about the state court judgment dismissing Daigneault's lawsuit, and seeking review of that judgment, Rooker-Feldman does bar the claim. Daigneault is a state court loser, and this federal lawsuit was filed a number of months after the U.S. Supreme Court denied review of his initial state case.

claims: the 300-day time limit, and the Rooker-Feldman doctrine.  Because these grounds are insufficient to fully dismiss Daigneault's ADEA claim, his retaliation claim against Eaton survives to the extent that (1) it is based on defendants' litigation conduct rather than the state court judgment, and (2) it is based on conduct that occurred no earlier than 300 days before March 25, 2005.

C.    Section 1985 Claim

Daigneault's third claim for relief arises under 42 U.S.C. § 1985.  Section 1985 bars private individuals from engaging in various kind of conspiracies to deprive someone of their civil rights.  The Supreme Court has identified five broad categories of conspiratorial activity that are proscribed by § 1985: (1) interference with federal officers, (2) interference with the administration of justice in federal court, (3) interference with the administration of justice in state courts, (4) interference with private enjoyment of equal protection of the law and equal privileges and immunities, and (5) interference with the right to support candidates in federal elections.  Kush v. Rutledge, 460 U.S. 719, 724 (1983).  For several reasons, Daigneault's § 1985 claim cannot proceed.

As an initial matter, much of what Daigneault discusses in his Amended Complaint is time barred.  In this case, the court must apply a three-year statute of limitations.  See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994) (holding that Connecticut's three-year statute of limitations must apply for civil rights suits under § 1983); Meyer v. Frank, 550 F.2d 726, 728 n.5 (2d Cir. 1977) (holding that the same

15

limitations period will govern suits under § 1983 and § 1985).  Because Daigneault's

employment with Eaton ended in 1999, approximately seven year before Daigneault

filed this lawsuit, Daigneault cannot bring a § 1985 action based on conduct during his

employment and termination from Eaton.[10]

Turning to post-termination conduct, it is obvious that Daigneault has not alleged

sufficient facts to state a claim under the first or fifth categories.  There is no indication

that Daigneault was a federal officer during the state court litigation, nor is there

anything in the Amended Complaint that relates to federal elections.

The second category deals with interference with federal court proceedings, and

here Daigneault does allege that some of the defendants made false arguments to this

court in the 04-cv-984 case.  However, when applied to civil proceedings, § 1985 only

reaches conspiratorial conduct that seeks to influence federal proceedings by "force,

intimidation, or threat" or by "injur[ing a] party or witness in his person or property."  42

U.S.C. § 1985(2).  No conduct of that sort is alleged in the Amended Complaint.

That leaves the third and fourth categories: interference with state courts, and

interference with equal rights.  Here too, Daigneault's claim must fail under the

governing law.

In order to maintain a suit under the equal rights portion of § 1985, which is

_____

[10] Although Daigneault at times seems to argue for equitable tolling, the court
can discern no good reason why equitable tolling would be appropriate for Daigneault's
pre-2003 claims.  Indeed, in the period before this lawsuit, Daigneault consulted with
counsel and brought a number of claims arising out of his employment relationship with
Eaton.  It is not clear why Daigneault did not bring a § 1985 suit at that time.

codified in the first part of 42 U.S.C. § 1985(3), a plaintiff must show that his rights were deprived on account of class-based animus. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993); Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Additionally, because of similar language in portions of 42 U.S.C. § 1985(2),[11] the Supreme Court has indicated that a similar requirement applies under the interference with state courts portion of the statute. Kush, 460 U.S. at 725; see also Bray, 506 U.S. at 281 n.13. Daigneault's Amended Complaint contains no allegations that the defendants' state court actions were motivated by any class-based animus, and his

───────────────────

[11] The relevant portion of 42 U.S.C. § 1985(2) creates liability for two or more people to conspire

> for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2). This is quite similar to the relevant portion of 42 U.S.C. § 1985(3), which creates liability for conspiring

> for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws.

42 U.S.C. § 1985(3).

claim therefore fails.[12]

      D.     Civil RICO Claims

Daigneault final claim is brought under the civil RICO statute.  See 18 U.S.C.

§ 1964.  However, contrary to this court's Standing Order in Civil RICO Cases, see D.

Conn. Civ. R. app., Daigneault did not file a RICO Case Statement that, inter alia, states

"[t]he alleged predicate acts and the specific statutes which were allegedly violated" by

the defendants.  Daigneault's Amended Complaint did at least state that his RICO claim

was "under color of 18 U.S.C. §§ 201, 372, 1503, 1512, 1513, 1623, possible violation

of the FAA Suspected Fraudulent Parts Program . . ., withholding/destructions of

evidence in re: said federal crimes, [and] criminal contempt of court to procure

continued violation of 29 U.S.C. § 626(f)(1)."  Amended Compl. at 4.

Daigneault's civil RICO claim is untimely to the extent that it is based on events

that took place during his employment at Eaton.  Civil RICO claims have a four-year

statute of limitations, see Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S.

143, 156 (1987), and Daigneault's employment with Eaton ended approximately seven

---

[12] Given the disjunctive language of the state courts portion of 42 U.S.C.
§ 1985(2), it may be possible to maintain an action under that provision if there is a
conspiracy motivated by class-based animus or a conspiracy motivated by a desire to
prevent someone from enforcing rights to equal protection.  See 42 U.S.C. § 1985(2).
Yet even if Daigneault wished to proceed under the latter theory, nothing in his
Amended Complaint alleges that the defendants took action against him for enforcing
equal protection rights.  Instead, defendants appear only to have taken action against
him for attempting to enforce his ADEA waiver rights.  That is insufficient.  See Sherlock
v. Montefiore Med. Ctr., 84 F.3d 522, 527 (2d Cir. 1996) (holding that a plaintiff cannot
maintain a § 1985 claim based on the deprivation of rights guaranteed by the ADEA).

years before this suit was filed. Indeed, all pre-2002 conduct discussed in the

Amended Complaint cannot form the basis of a valid civil RICO claim,[13] which renders

meaningless all of the alleged violations of FAA programs and acts of evidence

destruction discussed in the Amended Complaint.

The remaining conduct discussed in the Amended Complaint is at least timely.

Nonetheless, Daigneault's claim based on that conduct cannot withstand the

defendants' Motion to Dismiss. Daigneault's problem is that, in order to have an

actionable civil RICO claim, a plaintiff must establish that the defendants engaged in "a

pattern of racketeering activity,"[14] 18 U.S.C. § 1962(c), and racketeering activity is in

turn defined as the commission of one or more crimes specifically listed in the statute.

Id. § 1961(1).

To the extent that Daigneault relies on criminal contempt of court, that crime is

not listed and cannot be a valid RICO predicate. Daigneault's allegations of contempt

only cover contempt in the state courts, which is a state law crime, and the only state

law RICO predicates are acts or threats "involving murder, kidnaping, gambling, arson,

robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled

---

[13] For statute of limitations purposes, it is irrelevant that some or all of the defendants may have engaged in later actionable conduct within the limitations period. The earlier conduct is still not actionable. See Klehr v. A.O. Smith Corp., 521 U.S. 179, 186-87 (1997).

[14] One could also establish a civil RICO claim if the defendants were engaged in the "collection of an unlawful debt," 18 U.S.C. § 1962(c), but given the narrow definition of "unlawful debt," see id. § 1961(6), it is plain that this part of RICO is inapplicable to the instant case.

substance or listed chemical."  Id.

Daigneault's remaining alleged predicates are at least listed in the statute.  But Daigneault has failed to allege any conduct by the defendants, within the limitations period, that could constitute any of these crimes.  Section 201 of Title 18 of the United States Code talks about bribery, but all of the bribery discussed in the Amended Complaint took place before 1999.  Section 372 criminalizes conspiracies that interfere with federal officials, and no such conduct is alleged to have occurred during the limitations period.   Sections 1503, 1512, and 1513 refer to actions taken to corruptly influence, tamper with, or retaliate against federal jurors, court officers, witnesses, and victims.  Again, no such conduct is alleged by Daigneault within the limitations period.[15] Finally, Section 1623 pertains to false declarations, made under oath, in federal proceedings.  Daigneault has not alleged that, within the limitations period, any defendant made false statements under oath, or otherwise subject to the penalties of perjury, in connection with any federal court proceedings.

---

[15] The closest Daigneault comes is his allegation that defendants made false representations of fact to this court when they moved to dismiss his Complaint in the 04-cv-984 case.

If this is Daigneault's basis for invoking 18 U.S.C. §§ 1503, 1512, and /or 1513, the court dismisses this aspect of the claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  In order to be actionable, racketeering activity must be the "but for" cause of any injury sustained by the plaintiff.  See Holmes v. Sec. Investor Protection Corp., 503 U.S. 258, 268 (1992); Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001).  Given the procedural posture in the 04-cv-984 case, any factual misstatements by defendants in their Motion could not have and did not affect the court's ruling.  Indeed, the court's multiple rulings in that case have in no way relied on the alleged factual misstatement that Daigneault "voluntarily dismissed" his original state court lawsuit.

In opposing the defendant's Motion to Dismiss, Daigneault argues that he can at least maintain his RICO claim on the basis of the mail and wire fraud statutes. Yet Daigneault's Amended Complaint did not identify these statutes as the basis of his RICO claim, nor did Daigneault file a RICO Case Statement as he was required to do under the court's Standing Order. The defendants' were accordingly never put on timely notice that Daigneault was relying on these statutes.

In light of the above, the court will dismiss Daigneault's civil RICO claim insofar as it is based on: (1) injuries suffered before October 24, 2002, and (2) later injuries suffered due to the predicate offenses identified in Daigneault's Amended Complaint. If Daigneault wishes to pursue his RICO claim on the basis of mail fraud and/or wire fraud, he must file a RICO Case Statement that complies with this court's Standing Order.[16]

## III.    OTHER MOTIONS

Several other motions remain outstanding. First, the defendants have filed a Motion seeking a permanent injunction that bars Daigneault from filing "further abusive and harassing litigation." See Doc. No. 17. In particular, the defendants seek to enjoin Daigneault from filing any further lawsuits against the defendants, or individuals in privity with them, regarding matters related to Daigneault's employment, and the many litigations that have surrounded that employment. Id. at 16. The court **DENIES** this

---

[16] A copy of this court's Standing Order in Civil RICO Cases is attached as an appendix to this Ruling.

request.

In determining whether or not to restrict a litigant's further access to the courts, a

district court must consider five factors:

> (1) the litigant's history of litigation and in particular whether
> it entailed vexatious, harassing or duplicative lawsuits; (2)
> the litigant's motive in pursuing the litigation, e.g., does the
> litigant have an objective good faith expectation of
> prevailing?; (3) whether the litigant is represented by
> counsel; (4) whether the litigant has caused needless
> expense to other parties or has posed an unnecessary
> burden on the courts and their personnel; and (5) whether
> other sanctions would be adequate to protect the courts and
> other parties.

Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986).  Ultimately, the

question the court must ask is "whether a litigant who has a history of vexatious

litigation is likely to continue to abuse the judicial process and harass other parties."  Id.

The court acknowledges that Daigneault's conduct with regard to these

defendants has been less than exemplary, and it further acknowledges that the pro se

Daigneault has been subject to orders in the Connecticut state courts that prohibit him

from making certain filings without leave of court.  At the same time, however,

Daigneault has pressed a number of arguments that, while generally not meritorious,

are not so far beyond the pale or so repetitive as to lead this court to believe that his

federal lawsuits against these defendants are not in good faith.

While the court is mindful of the expense that has been visited upon the

defendants, the court notes that Daigneault has in forma pauperis status.  Assuming

that Daigneault continues to avail himself of that status, any further lawsuit filed by him

22

would be subject to sua sponte dismissal by this court if it were frivolous, malicious, or failed to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B). At this time, the court does not believe that a more stringent remedy is needed.

This court's ruling should in no way be understood as an encouragement of a future lawsuit arising out of the events of this case. If Daigneault were to file such a lawsuit, the court would seriously consider a renewed motion for an injunction.

The second outstanding Motion is Daigneault's Motion to Withdraw Order. See Doc. No. 23. Daigneault seeks to withdraw an Order of this court, entered by the Clerk under D. Conn. Civ. R. 83.3(a), requiring him to post $500 security as costs. Daigneault argues that because he has in forma pauperis status, he cannot be required to post security as a requirement for maintaining this suit.

The court has reviewed Daigneault's financial affidavit. Based on the representations made therein, the court concludes that Daigneault should be required to post a bond of $100, payable at the rate of $10 a week beginning March 1, 2008.[17]

The next outstanding Motion is Daigneault's Motion to enjoin the state courts

---

[17] Daigneault appears to argue that, because he has been granted in forma pauperis status, the court cannot require him to post any security. However, the relevant statute is plainly discretionary: it provides that the court "may authorize the commencement . . . of any suit . . . without prepayment of fees or security therefor, by a person who submits an affidavit . . . that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a) (emphasis added). Here, the court has allowed Daigneault to pursue his suit without the prepayment of fees. However, the court concludes that, because of Daigneault's financial situation, payment of some security is appropriate.

from enforcing "unripe" ADEA waivers.  <u>See</u> Doc. No. 36.  This Motion is **DENIED**.  As

an initial matter, no state officials or entities are a party to this lawsuit, and the court is

powerless to enjoin nonparties.  In any event, Daigneault appears to be seeking an

injunction specifically related to his 1999 lawsuit in the state courts.  <u>See</u> Doc. No. 36 at

1.  That kind of injunction is barred by federal law, <u>see</u> 28 U.S.C. § 2283, as there is no

federal provision that expressly authorizes such interference.  The Second Circuit has

already rejected a similar Motion in the 04-cv-984 case.  <u>See</u> <u>Daigneault v. Eaton Corp.</u>,

242 Fed. Appx. 761, 762 (2d Cir. 2007).[18]

Daigneault has also filed a Motion seeking leave to file a Motion to Strike out of

time.  <u>See</u> Doc. No. 57.  The court is mindful of its duty to give a modicum of leeway to

<u>pro se</u> parties.  Nonetheless, despite the court's best efforts, the court is unable to

discern exactly what Daigneault would propose to strike from the record, and why he

could not have brought a Motion to Strike in a timely manner.[19]  The Motion is **DENIED**.

Alternatively, if Daigneault is simply seeking the opportunity to provide additional

arguments against the Motion to Dismiss, the Motion is **DENIED AS MOOT** because

Daigneault's proposed Motion to Strike offers no arguments which would alter this

---

[18] The defendants have moved to stay the briefing in response to Daigneault's
Motion for Injunctive Relief.  <u>See</u> Doc. No. 40.  That Motion is **DENIED AS MOOT**.

[19] As best the court can tell, the Motion to Strike arises from statements that one
of Eaton's attorneys made during oral argument, before the Second Circuit, in one of
the related federal cases.  The court is unable to discern any valid legal reason why
these statements would lead to the conclusion that material in this action should be
stricken from the record.

court's conclusions.

Daigneault's last pending motion on the docket is his Motion for Unnecessary Costs of Service. See Doc. No. 79. In this Motion, Daigneault argues that some of the defendants should reimburse various costs that Daigneault incurred in serving these defendants, as none of the defendants executed waivers of service. See Fed. R. Civ. P. 4(d)(2). The defendants acknowledge that they are liable for some costs, but argue that (1) Daigneault's preparation costs, and (2) costs attributable to errors made by the U.S. Marshal's service and the Clerk's office, are not compensable. See Doc. No. 81. In a footnote, the defendants also question the factual basis for some of Daigneault's expenses. Id.

Defendants' legal objections are misplaced. Rule 4(d)(5) states that the compensable costs include "costs subsequently incurred in effecting service." This plainly includes reasonable preparation costs, such as expenses for printing and copying various documents, as such costs are "subsequently incurred in effecting service." Similarly, it is plain that the Rule encompasses costs attributable to errors made by the Marshal's and Clerk's offices. While such expenses are unfortunate, they are still "subsequently incurred." To the extent that it may seem "unfair" to the defendants to force them to pay for such expenses, the defendants are in no place to complain, as they are the ones who refused to waive formal service. They assumed the risk that the costs "subsequently incurred" might be higher than is normally to be expected.

Despite the problems with defendants' legal arguments, they do raise legitimate factual concerns about the basis for the figures that Daigneault has submitted for reimbursement. The court notes that Daigneault's Motion has not been accompanied by affidavit or other evidence demonstrating the basis for his costs incurred. Until Daigneault does so, this court lacks the evidentiary basis needed for an award of costs. The Motion is **DENIED** without prejudice to refiling in 20 days, accompanied by appropriate evidence.

The final pending Motion on the docket is defendants' Motion to Consolidate this case with Case No. 04-cv-984. By Ruling issued today, the court has denied an identical consolidation motion in that case, and for similar reasons, the court **DENIES** the Motion in this case.

## IV. CONCLUSION

The defendants' Motion to Dismiss [Doc. No. 17] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's § 1983 and § 1985 claims are dismissed. The ADEA claim is dismissed, except insofar as it alleges a retaliation claim based on litigation conduct by the defendants that took place no more than 300 days before March 25, 2005. The civil RICO claim is dismissed to the extent discussed in the opinion. If plaintiff fails to submit a RICO Case Statement within 30 days of this Ruling, the entire Civil RICO claim will be deemed abandoned and will be dismissed. If plaintiff submits such a statement, the defendants shall have 21 days to file a renewed Motion to Dismiss the civil RICO claim.

The defendants' request for an injunction [Doc. No. 17] is **DENIED** without prejudice.  Plaintiff's Motion to Withdraw Order [Doc. No. 23] is **GRANTED IN PART**. Plaintiff's Motion for Injunction [Doc. No. 36] is **DENIED**.  Defendants' Motion to Continue [Doc. No. 40] is **DENIED AS MOOT**.  Plaintiff's Motion for Leave to File Out of Time [Doc. No. 57] is **DENIED**.  Defendants' Motion to Consolidate [Doc. Nos. 71, 73] is **DENIED**.  Plaintiff's Motion for Unnecessary Costs of Service is **DENIED** without prejudice to refiling within 20 days.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 11th day of February, 2008.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

**APPENDIX**

STANDING ORDER IN CIVIL RICO CASES

In all civil actions where the complaint contains a cause of action pursuant to 18 U.S.C. §§ 1961--1968 the plaintiff shall file a RICO Case Statement within twenty (20) days of filing the complaint. Consistent with counsel's obligations under Fed.R.Civ.P. 11 to make a "reasonable inquiry" prior to the filing of the complaint, the RICO Case Statement shall state in detail the following information:

1. The alleged unlawful conduct that is claimed to be in violation of 18 U.S.C. §§ 1962(a), (b), (c) and/or (d).

2. The identity of each defendant and the alleged misconduct and basis of liability of each defendant.

3. The identity of the alleged wrongdoers, other than the defendants listed in response to paragraph 2, and the alleged misconduct of each wrongdoer.

4. The identity of the alleged victims and the manner in which each victim was allegedly injured.

5. A description of the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim, which shall include the following information:

a. The alleged predicate acts and the specific statutes which were allegedly violated;

b. The dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;

c. If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made shall be identified;

d. Whether there has been a criminal conviction for violation of the predicate acts;

e. Whether civil litigation has resulted in a judgment in regard to the predicate acts;

f. The manner in which the predicate acts form a "pattern of racketeering activity"; and

g. Whether the alleged predicate acts relate to each other as part of a common plan, and if so, a detailed description of the common plan.

6. A detailed description of the alleged enterprise for each RICO claim, which shall include:

a. The names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;

b. The structure, purpose, function and course of conduct of the enterprise;

c. Whether any defendants are employees, officers or directors of the alleged enterprise;

d. Whether any defendants are associated with the alleged enterprise;

e. Whether plaintiff contends that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and

f. If any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation as to whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

7. Whether plaintiff contends that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

8. The alleged relationship between the activities of the enterprise and the pattern of racketeering activity, including a description of the manner in which the racketeering activity differs, if at all, from the usual and daily activities of the enterprise.

9. The benefits, if any, the alleged enterprise receives or has received from the alleged pattern of racketeering.

10. The effect of the activities of the enterprise on interstate or foreign commerce.

11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:

a. The identity of the individual(s) who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

b. The use or investment of such income.

12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

13. If the complaint alleges a violation of 18 U.S.C. § 1962(b), provide the following information:

a. The individuals who are employed by or associated with the enterprise; and

b. Whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).

14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.

15. The alleged injury to business or property.

16. The direct casual relationship between the alleged injury and the violation of the RICO statute.

17. The damages sustained for which each defendant is allegedly liable.

18. A description of other federal causes of action alleged in the complaint, if any, and citation to the relevant statutes.

19. A description of all pendent state claims alleged in the complaint, if any.

20. Any additional information plaintiff feels would be helpful to the Court in processing the RICO claim.